UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM TACON, *as administrator of
Caribbean Commercial Investment Bank Ltd.*,

Plaintiff,

v.

ROBERT CROMWELL, *and* SARIT L.
ROZYCKI,

Defendants.

No. 23-CV-8100 (KMK)

OPINION & ORDER

<u>Appearances</u>:

Cassandra L. Porsch, Esq.
gunner*cooke* US LLP
New York, NY
*Counsel for Plaintiff*

Geoffrey T. Raicht, Esq.
Geoffrey T Raicht, PC
Rye, NY
*Counsel for Plaintiff*

Steven A. Weg, Esq.
Koffsky Schwalb LLC
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Plaintiff William Tacon ("Plaintiff"), as administrator of Caribbean Commercial

Investment Bank Ltd. ("CCIB"), brings this Action against Robert Cromwell ("Cromwell") and

Sarit L. Rozycki ("Rozycki," and together with Cromwell, "Defendants"), alleging that

Defendants breached a guaranty agreement pursuant to which they were obligated to pay

Plaintiff a certain amount due under a loan for a villa in Anguilla. (*See* Am. Compl. ¶¶ 28–32

(Dkt. No. 21).)[1]  Before the Court is Defendants' Motion To Dismiss the Amended Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").  (*See* Not. of Mot. (Dkt.

No. 27).)  For the reasons that follow, Defendants' Motion is granted.

## I.  Background

### A.  Materials Considered

In connection with the instant Motion, the Parties chose to submit numerous exhibits,

apparently believing that such a document dump at this early stage of the case would bolster their

arguments.  (*See, e.g.*, Declaration of Robert Cromwell ("Cromwell Decl.") (attaching eighteen

exhibits) (Dkt. No. 28); Declaration of William Tacon ("Tacon Decl.") (attaching five exhibits)

(Dkt. No. 35); Declaration of Cassandra Porsch ("Porsch Decl.") (attaching four exhibits) (Dkt.

No. 36); Reply Declaration of Robert Cromwell ("Cromwell Reply Decl.") (attaching four

exhibits) (Dkt. No. 41).)  Thus, as a threshold matter, the Court must decide what documents it

may consider in deciding the Motion.

Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the

pleadings themselves" because "[t]o go beyond the allegations in the Complaint would convert

the Rule 12(b)(6) motion into one for summary judgment pursuant to [Rule] 56."  *Thomas v.*

*Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002); *accord Doe v.*

*County of Rockland*, No. 21-CV-6751, 2023 WL 6199735, at *1 (S.D.N.Y. Sept. 22, 2023).

"Nevertheless, the Court's consideration of documents attached to, or incorporated by reference

in the Complaint, and matters of which judicial notice may be taken, would not convert the

motion to dismiss into one for summary judgment."  *Thomas*, 232 F. Supp. 2d at 275; *see also*

*Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6)

---

[1] Unless otherwise noted (as here), the Court cites to the ECF-stamped page number in the upper-right corner of each page in cites from the record.

motions to dismiss," courts may "consider the complaint in its entirety . . . , documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (quotation marks omitted)); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken.'" (alteration adopted) (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993))).

"Generally, a court may incorporate documents referenced where (1) [the] plaintiff relies on the materials in framing the complaint, (2) the complaint clearly and substantially references the documents, and (3) the document's authenticity or accuracy is undisputed." *Stewart v. Riviana Foods Inc.*, No. 16-CV-6157, 2017 WL 4045952, at *6 (S.D.N.Y. Sept. 11, 2017) (emphasis omitted) (collecting cases); *see also Dunkelberger v. Dunkelberger*, No. 14-CV-3877, 2015 WL 5730605, at *5 (S.D.N.Y. Sept. 30, 2015) ("To be incorporated by reference, the complaint must make a clear, definite, and substantial reference to the documents, and to be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." (alterations adopted) (quoting *Bill Diodato Photography LLC v. Avon Prods., Inc.*, No. 12-CV-847, 2012 WL 4335164, at *3 (S.D.N.Y. Sept. 21, 2012))).

To start, Plaintiff has attached two exhibits to the Amended Complaint—a Continuing Guaranty dated November 11, 2005 (the "Guaranty"), (*see* Am. Compl. Ex. A ("Guaranty") (Dkt. No. 21-1)), and a Loan Agreement dated December 20, 2005 (the "Loan"), (*see id.* Ex. B ("Loan") (Dkt. No. 21-2)). Defendants do not dispute that the Court may properly consider these exhibits, nor could they, because "[a] copy of a written instrument that is an exhibit to a pleading

is a part of the pleading for all purposes."  Fed. R. Civ. P. 10(c); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (explaining that a complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference" (citation omitted)); *Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, No. 22-CV-8842, 2023 WL 5971144, at *6 (S.D.N.Y. Sept. 14, 2023) (considering a loan agreement and guaranty that were attached to the complaint in connection with deciding a motion for judgment on the pleadings).

For their part, Defendants have submitted eighteen exhibits with their opening papers and another four exhibits with their Reply.  (*See generally* Cromwell Decl.; Cromwell Reply Decl.) At this juncture, the court will focus its analysis on: (1) a copy of an email chain dated May 13, 2019 to October 24, 2019, (*see* Cromwell Decl. Ex. Q (Dkt. No. 28-17)); and (2) a copy of an email chain dated May 13, 2019 to December 10, 2019, (*see id.* Ex. R (Dkt. No. 28-18)).

With respect to these email chains, the Court notes that Plaintiff does not dispute the authenticity or accuracy of those exhibits.  (*See generally* Pl's Mem. of Law in Opp'n to Mot. ("Pl's Opp'n") (Dkt. No. 33).)  *See also Stewart*, 2017 WL 4045952, at *6 (setting forth the factors for determining whether a document may be incorporated by reference).  Additionally, the Amended Complaint makes clear reference to specific emails from these chains, (*see* Am. Compl. ¶ 18 ("On October 24, 2019, [] Cromwell sent a signed email to [Plaintiff] and his colleague Aaron Gardner explaining the steps he had taken to list the [p]roperty for sale in furtherance of generating proceeds to pay towards the [l]oan indebtedness."); *see also id.* ("On December 10, 2019, [] Cromwell sent a signed email to Mr. Gardner and [Plaintiff] stating that the Property had been listed for sale.")), and Plaintiff clearly relied upon those emails in framing the Amended Complaint; indeed, as his Opposition makes clear, Plaintiff relied on those emails

with an eye toward avoiding a finding that his claim was time barred, (*see* Pl's Opp'n 13–14).

Thus, the Court will consider Exhibits Q and R to the Cromwell Declaration.  *See Garcia v. Dezba Asset Recovery, Inc.*, 665 F. Supp. 3d 390, 397 (S.D.N.Y. 2023) (concluding that an email was incorporated by reference where that email was "quoted from directly" in the operative complaint); *Cromwell-Gibbs v. Staybridge Suite Times Square*, No. 16-CV-5169, 2017 WL 2684063, at *1 n.2 (S.D.N.Y. June 20, 2017) (holding that an email chain was incorporated by reference when the complaint made "direct reference to the e-mail chain [and] the contents of the e-mails exchanged").[2]

Finally, the Court considers one of the exhibits that Plaintiff submitted—a November 25, 2022 letter from D. Michael Bourne to Eustella Fontaine.  (*See* Tacon Decl. Ex. E (Dkt. No. 35-5).)[3]  The November 25, 2022 letter is plainly referenced in the Amended Complaint, (*see* Am. Compl. ¶ 23 ("On November 25, 2022, on behalf of [] Cromwell, Mr. Bourne sent a signed letter to Ms. Fontaine offering all of the fixtures, fittings[,] and equipment . . . on the [p]roperty in exchange for $40,000 to be put towards the auction expenses and the remaining indebtedness.'")), and Defendants do not dispute the authenticity or accuracy of this document, (*see* Defs' Reply Mem. of Law in Supp. of Mot. ("Defs' Reply") 11 (Dkt. No. 40)).  And, again, Plaintiff "relie[d] on the [letter] in framing the [Amended C]omplaint," *Stewart*, 2017 WL 4045952, at *6, given that he depends on it in connection with his indispensable allegations that Defendants' actions reset the applicable statute of limitations, (*see* Pl's Opp'n 15).  Thus, the

---

[2] To be clear, the Court will consider the specific emails referenced in the Amended Complaint, not the entirety of the chains reflected in Exhibits Q and R to the Cromwell Declaration.

[3] Because they are not referenced in the Amended Complaint and the Parties do not otherwise provide a basis for the Court to consider their remaining exhibits at the motion-to-dismiss stage, the Court declines to do so.

Court concludes that the November 25, 2022 letter is incorporated by reference and that it may properly consider that letter in deciding Defendants' Motion.  *See Tyson v. Town of Ramapo*, No. 17-CV-4990, 2019 WL 1331913, at *2 (S.D.N.Y. Mar. 25, 2019) (finding that two letters were incorporated by reference where they were cited and discussed in the operative complaint, and they "relate[d] to [the plaintiff's] termination, which [was] a matter at the core of th[e] case").

    B.  Factual Background

Unless otherwise stated, the following facts are drawn from the Amended Complaint and the above-referenced Exhibits that the Parties submitted in connection with their Motion papers. The facts alleged are assumed true for the purpose of resolving the instant Motions.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

    1.  The Parties

Plaintiff is the court-appointed administrator of CCIB, an Anguillan corporation with its principal place of business in Anguilla.  (Am. Compl. ¶ 1.)  He was appointed to that position by the High Court of Justice (Anguilla Circuit) on February 22, 2016.  (*Id.*)  As the administrator of CCIB, he took control over all of CCIB's operations, and has continuously pursued and recovered assets for the benefit of CCIB's creditors.  (*Id.*)

Defendants are both citizens of New York.  (*Id.* ¶ 2.)  Together, Defendants are the sole shareholders of non-party Indigo Holdings Ltd. ("Indigo"), a corporation organized under the laws of Anguilla.  (*Id.* ¶ 3.)

    2.  The Guaranty and Loan

On November 11, 2005, Defendants entered into the Guaranty with CCIB.  (*Id.* ¶ 7; *see also* Guaranty.)  Pursuant to the Guaranty, Defendants were made guarantors and undertook to

"jointly and severally unconditionally guarantee[] and promise[] to pay to [CCIB] . . . any and all indebtedness of" Indigo to CCIB up to $667,000.  (Am. Compl. ¶ 7; *see also* Guaranty §§ 1–2.) Section 2 of the Guaranty provided that any payment by Indigo would not reduce the guarantors' maximum obligation under the Guaranty.  (Am. Compl. ¶ 7; *see also* Guaranty § 2.)[4]

On December 20, 2005, Indigo entered into a loan with CCIB in the principal amount of $667,000, and a term of 246 months commencing on March 10, 2006 and maturing on November 10, 2025.  (Am. Compl. ¶ 10; *see also* Loan 2.)  The stated purpose of the Loan was to finance the construction of a villa, and the Loan was secured by real property Registration Section West End, Block 17709B, Parcel 177, Anguilla (the "Property").  (Am. Compl. ¶ 11; *see also* Loan 2–3.)  In addition, the Loan specifically references the Guaranty as part of the "operative instrument" for the transaction.  (Loan 8; *see also* Am. Compl. ¶ 13.)

In February 2012, Indigo defaulted on the terms of the Loan by failing to make required payments.  (Am. Compl. ¶ 14.)  Under the Loan, if a default occurs in connection with the payment of "any part or installment of principle [sic] or on interest, then its whole sum of principal and interest shall become immediately due and payable at the option of [CCIB] without notice."  (Loan 6; *see also* Am. Compl. ¶ 14.)  Further, Indigo was subject to a delinquency charge "for each installment in default 10 days[,] in an amount equal to 5% of each installment and any amount payable at the same time."  (Loan 6; *see also* Am. Compl. ¶ 14.)

---

[4] As noted in the Amended Complaint, (*see* Am. Compl. ¶ 8), Section 3 of the Guaranty provides, among other things, that "obligations hereunder are joint and several, and independent of the obligations of [Indigo], and a separate action or actions may be brought and prosecuted against Guarantors whether action is brought against [Indigo] or whether [Indigo] be joined in any such action or actions; and *Guarantors waive the benefit of any statute of limitations affecting their liability hereunder or the enforcement thereof*[,]" (Guaranty § 3 (emphasis added)).

### 3.  Plaintiff's Efforts to Collect on the Debt from 2016 to 2019

By letter dated July 19, 2016, Plaintiff made a demand on Defendants to pay Indigo's outstanding debt on the Loan pursuant to the Guaranty.  (Am. Compl. ¶ 15.)  Thereafter, from August 2016 through July 2017, Defendants corresponded by email with Plaintiff's colleague, Ian Morton ("Morton"), about obtaining a valuation of the Property and putting it up for sale to generate proceeds towards the debt.  (*Id.* ¶ 16.)  Cromwell is also alleged to have told Morton that he would attempt to convert the Property from a leasehold to fee simple ownership to assist in realizing a higher sale price.  (*Id.*)

Following that series of correspondence, the Property was damaged during Hurricane Irma.  (*Id.* ¶ 17.)  Thus, further correspondence between Defendants and Morton from that time until the spring of 2018 concerned repairing the damage to the Property and obtaining an updated valuation.  (*Id.*)

From the middle of 2018 until the end of 2019, the Parties continued communicating about the amount due on the Loan.  (*See generally id.* ¶ 18.)[5]  Specifically, on July 3, 2018, Cromwell sent a signed letter to Plaintiff indicating that he desired to amicably resolve the debt under the Loan and stating that Indigo was willing to seek a separate loan from a non-bank lender to place towards that debt.  (*Id.*)  In that letter, Cromwell also mentioned Indigo's

---

[5] Plaintiff specifically avers that, "[a]s time stretched on," Defendants "continued to acknowledge the debt owed to CCIB."  (Am. Compl. ¶ 18.)  However, this conclusory allegation, without more, cannot defeat Defendants' Motion.  *See Porter v. Bunch*, No. 16-CV-5935, 2019 WL 1428431, at *10 (S.D.N.Y. Mar. 29, 2019) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." (alteration adopted) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002))); *see also Lombardo v. Freebern*, No. 16-CV-7146, 2019 WL 1129490, at *9 (S.D.N.Y. Mar. 12, 2019) (same).  In any event, as discussed below, Plaintiff has failed to plausibly plead that Defendants acknowledged their debt under the Loan.  *See infra* Section II.B.3.

obligations under the Loan, as well as the associated obligations of the guarantors (i.e., Defendants). (*Id.*)

Then, on August 2, 2019, Cromwell sent another letter to Plaintiff offering to make two lump-sum payments towards the debt—one at that time and another three years later. (*Id.*) Around two months later—on October 4, 2019—Cromwell sent yet another letter to Plaintiff, stating that he wished to market the Property for sale to put the proceeds towards a resolution of the Loan debt. (*Id.*)

On October 24, 2019, Cromwell sent an email to Plaintiff's colleague, Aaron Gardner ("Gardner"), in which he copied Plaintiff and explained the steps he had taken to list the Property for sale. (*Id.*; *see also* Cromwell Decl. Ex. Q at 1.) More specifically, Cromwell explained, among other things, that "[w]e have provisionally selected Properties in Paradise as the broker with whom we will list the [P]roperty" and "[w]e have had discussion with the broker about the listing price and how this fits into a 'sales strategy' in the context of the Anguilla market, which is a unique market." (Cromwell Decl. Ex. Q at 1.) Cromwell also noted that he anticipated finalizing the relevant details with the broker the following week. (*See id.*)

Later, on December 10, 2019, Cromwell sent another email to Gardner, copying Plaintiff and stating that the Property had been listed for sale. (Am. Compl. ¶ 18; *see also* Cromwell Decl. Ex. R at 1.) Cromwell indicated that the Property was listed for $895,000, and that he expected "the listing [to] appear on the Properties in Paradise website in the next couple of days." (Cromwell Decl. Ex. R at 1.)

### 4. Developments Relating to Plaintiff's Collection on the Debt After 2020

As of April 2021, the Property had still not been sold. (Am. Compl. ¶ 19.) Thus, at that time Plaintiff sent a letter to Cromwell, stating that he was no longer willing to forbear on

enforcing the Loan and that any sale of the Property would likely leave a shortfall on the total amount due under the Loan. (*Id.*) Cromwell also requested that Indigo begin making repayments on the Loan. (*Id.*) As alleged, however, Indigo failed to do so and Defendants likewise failed to make any payments toward the debt notwithstanding their status as guarantors, and despite having been reminded of their obligations under the Guaranty by Plaintiff. (*Id.* ¶ 20.)

Over eighteen months later, on November 4, 2022, Plaintiff conducted an auction of the Property in accordance with Anguillan law, which resulted in a successful credit bid of $644,000 on behalf of CCIB. (*Id.* ¶ 21.) According to Plaintiff, by November 2022, the unpaid principal, interest and penalties on the Loan amounted to over $1.1 million. (*Id.*)

By letter dated November 7, 2022, Eustella Fontaine ("Fontaine"), Anguillan counsel for Plaintiff, notified D. Michael Bourne ("Bourne"), Anguillan counsel for Defendants, of the results of the auction. (*Id.* ¶ 22.) Fontaine also reminded Defendants' counsel that Defendants were both liable as guarantors for the shortfall between the amount of the sale of the Property and the total amount that Indigo owed under the Loan at that time. (*Id.*)

On November 25, 2022, Bourne sent a letter on behalf of Indigo to Fontaine, offering all of the fixtures, fittings, and equipment ("FFE") on the Property in exchange for $40,000 to be put towards the auction expenses and the remaining indebtedness. (*Id.* ¶ 23; *see also* Tacon Decl. Ex. E at 1 (explaining that Bourne's client, Indigo, was offering "to sell and convey to [Plaintiff] for the sum of US$40,000.00 all the [FFE] which were not part of the public auction [of the Property]").) In the letter, Bourne stated that, in the event that Plaintiff accepted Indigo's offer, the $40,000 "is anticipated to be paid as a credit by or on behalf of Indigo . . . against the auction expenses with any surplus therefrom applied as an addition to the purchase price obtained at the public auction [of the Property]." (Tacon Decl. Ex. E at 1.) In December 2022,

Plaintiff agreed to accept the FFE in exchange for a $35,000 reduction in the outstanding debt amount. (Am. Compl. ¶ 23.) Since that time, neither Indigo nor Defendants have made any payments on the remaining amount due under the Loan. (*See id.* ¶ 24.)

By letters dated July 28, 2023 and August 28, 2023, Plaintiff, through counsel, demanded that Defendants satisfy their obligation under the Guaranty to pay Indigo's unresolved debt under the Loan. (*Id.* ¶ 25.) As of November 15, 2023, taking into account the amount of the credit bid on the Property and the $35,000 credit for the FFE, the total amount still due on the Loan was $582,915.11, which represents $533,457.06 in unpaid principal and $49,458.05 in unpaid interest and late fees. (*Id.* ¶ 26.)[6]

### C. Procedural History

Plaintiff filed the initial Complaint in this Action on September 15, 2023. (*See* Compl. (Dkt. No. 10).)[7] On October 10, 2023, Defendants submitted a pre-motion letter seeking leave to file a motion to dismiss, (*see* Letter from Steven A. Weg, Esq. to Court (Oct. 10, 2023) (Dkt. No. 18)), and Plaintiff filed a response in which he sought leave to file an amended complaint on October 17, 2023, (*see* Letter from Geoffrey T. Raicht, Esq. to Court (Oct. 17, 2023) (Dkt. No. 19)). The Court granted Plaintiff leave to file an amended complaint on October 27, 2023. (*See* Memo Endorsement (Dkt. No. 20).)

---

[6] The Court acknowledges that the Amended Complaint states that the amount due on the Loan as of November 15, 2023 was $582,915.10, (*see* Am. Compl. ¶ 26), but based on the figures alleged to still be due in unpaid principal and unpaid interest and late fees, the Court assumes that amount was the result of an arithmetic error.

Separately, the Court notes that Plaintiff asserts Defendants sold their home in Westchester County in January 2022 for $3.5 million, and purchased their current home in August 2022 for $1.65 million. (*Id.* ¶ 27.)

[7] Plaintiff attempted to file the Complaint on September 13 and 14, 2023, but those filings were flagged as deficient by the Clerk of Court. (*See* Dkt. Nos. 1, 7.)

On November 17, 2023, Plaintiff filed the Amended Complaint.  (*See* Am. Compl.)  The Amended Complaint contains one cause of action in which Plaintiff alleges that Defendants breached the Guaranty by failing to pay the amount due under the Loan in place of Indigo.  (*See id.* ¶¶ 28–32.)

Defendants filed another pre-motion letter requesting leave to file the instant Motion on December 5, 2023, (*see* Letter from Steven A. Weg, Esq. to Court (Dec. 5, 2023) (Dkt. No. 22)), to which Plaintiff responded on December 12, 2023, (*see* Letter from Geoffrey T. Raicht, Esq. to Court (Dec. 12, 2023) (Dkt. No. 24)).  The Court held a pre-motion conference on December 18, 2023, during which it adopted a briefing schedule.  (*See* Dkt. (minute entry for Dec. 18, 2023); *see also* Scheduling Order (Dkt. No. 26).)

Pursuant to that briefing schedule, Defendants filed their Motion on January 23, 2024.  (*See* Not. of Mot.; Cromwell Decl.; Mem. of Law in Supp. of Mot. ("Defs' Mem.") (Dkt. No. 29).)[8]  On March 15, 2024, Plaintiff filed his Opposition.  (*See* Pl's Opp'n; Tacon Decl.; Porsch Decl.)  Defendants filed their Reply on April 1, 2024.  (*See* Defs' Reply; Cromwell Reply Decl.)[9]

But the Parties did not see fit to leave it at that.  On April 3, 2024, Plaintiff sought leave to file a "very brief sur-reply declaration" and the Court granted that request that same day.  (*See* Dkt. Nos. 42–43.)  Plaintiff filed that document on April 5, 2024.  (*See* Tacon Sur-Reply Decl. (Dkt. No. 44).)  Also on April 5, 2024, Defendants filed a letter asking that the Court strike

---

[8] Plaintiff requested an extension of time to file his Opposition, as well as a corresponding extension of time for Defendants to file their Reply, on February 21, 2023, and the Court granted that application that same day.  (*See* Dkt. Nos. 30–31.)

[9] Defendants had requested leave to file an oversized brief on Reply on March 25, 2024, and the Court granted that request the next day.  (*See* Dkt. Nos. 38–39.)

certain paragraphs from Plaintiff's Sur-Reply on the grounds that it went beyond the scope of the

purpose for which the Court had granted leave to file that document and because it raised

arguments that should have been raised in Plaintiff's Opposition.  (*See* Letter from Steven A.

Weg, Esq. to Court (Apr. 5, 2024) (Dkt. No. 45).)

II.  Discussion

A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of

[its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint

suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and

quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a

right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any

set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must

allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a

plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[]

complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

13

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); *see also Gamboa v. Regeneron Pharms., Inc.*, — F. Supp. 3d —, 2024 WL 815253, at *3 (S.D.N.Y. Feb. 27, 2024) (same).

B.  Analysis

Defendants move to dismiss Plaintiff's breach of guaranty claim, arguing that it is time barred in light of New York's six-year statute of limitations for such claims.  (*See* Defs' Mem. 11–24.)  "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Ahmed v. Cigna Health Mgmt., Inc.*, No. 23-CV-8094, 2024 WL 3345819, at *3 n.1 (S.D.N.Y. July 8, 2024) (quoting *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014)).  As the next section of this Opinion &

Order makes clear, Defendants' statute of limitations defense does appear on the face of the Amended Complaint.  *See infra* Section II.B.1.

### 1.  Applicable Statute of Limitations

At the outset, the Court must decide which statute of limitation applies in this case.  "In diversity cases, a federal court located in New York will generally apply the choice-of-law rules and statute of limitations of the law of the forum state, not the law of the state in which the action accrued."  *Kleiman v. Kings Point Cap. Mgmt., LLC*, No. 18-CV-4172, 2020 WL 7249441, at *8 (E.D.N.Y. Sept. 30, 2020) (quoting *SOCAR (Societe Cameroonaise d'Assurance et de Reassurance) v. Boeing Co.*, 144 F. Supp. 3d 391, 395 (E.D.N.Y. 2015)), *report and recommendation adopted*, 2020 WL 7021648 (E.D.N.Y. Nov. 30, 2020); *see also Segarra v. Delta Airlines, Inc.*, No. 18-CV-8135, 2020 WL 3127879, at *2 (S.D.N.Y. June 12, 2020) ("Federal courts sitting in diversity apply the forum state's statutes of limitations.  And 'New York courts generally apply New York's statutes of limitations, even when the injury giving rise to the action occurred outside New York.'" (citation omitted) (quoting *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998))).[10]  "Under New York's borrowing statute, [N.Y. C.P.L.R.] 202, which governs the choice of law analysis for statutes of limitation, 'when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period, including all relevant tolling provisions, of either: (1) New York; or (2) the state where the cause of action accrued."  *Kravitz v. Binda*, No. 17-CV-7461, 2020 WL 927534, at *14 (S.D.N.Y. Jan. 21, 2020) (ultimately quoting *Thea v. Kleinhandler*, 807 F.3d 492, 497 (2d Cir. 2015)), *report and recommendation adopted sub nom. Kravitz as Tr. of*

---

[10] There is no dispute that the Court may exercise diversity jurisdiction over Plaintiff's single breach-of-guaranty claim.  *See* 28 U.S.C. § 1332(a).

*Creditor Tr. of Advance Watch Co., Ltd. v. Binda*, 2020 WL 917212 (S.D.N.Y. Feb. 26, 2020);

*accord Stuart*, 158 F.3d at 627 (same); *Kidder v. Hanes*, No. 21-CV-1109, 2023 WL 361200, at

*4 (W.D.N.Y. Jan. 23, 2023) (same); *see also In re Coudert Bros. LLP*, 673 F.3d 180, 190 (2d

Cir. 2012) ("To mitigate against abusive statute-of-limitations shopping, some states have

created mechanisms—binding on the local federal courts via [*Klaxon Co. v. Stentor Electric*

*Manufacturing Co.*, 313 U.S. 487 (1941)]—that discriminate against claims accruing out of state.

New York's borrowing statute . . . guards against forum shopping by out-of-state plaintiffs by

mandating use of the shortest statute of limitations available." (emphasis omitted)).[11]

The Parties appear to agree that Anguilla's statute of limitations for breach-of-guaranty

claims is twelve years.  *See Nat'l Bank of Anguilla (Priv. Banking & Tr.) Ltd. v. Considine*, 268

F. Supp. 3d 825, 828–29 (D.S.C. 2017) (noting that the statute of limitations for contractual

claims in Anguilla is twelve years).  It is also undisputed that New York's statute of limitations

for a claim arising out of a breach of a guaranty is six years.  *See, e.g.*, *Encore Nursing Ctr.*

*Partners Ltd. P'ship-85 v. Schwartzberg*, 102 N.Y.S.3d 218, 221 (App. Div. 2019) (explaining

that the statute of limitations applicable to breach-of-guaranty claims in New York is six years

(citing, inter alia, N.Y. C.P.L.R. 213)); *see also Cadlerock Joint Venture, L.P. v. Trombley*, 134

N.Y.S.3d 236, 237 (App. Div. 2020) (same); *Chi. Title Ins. Co. v. Brookwood Title Agency, LLC*,

114 N.Y.S.3d 703, 704 (App. Div. 2020) (same).  Accordingly, given that: (1) New York's

statute of limitations for breach-of-guaranty claims is six years shorter than that of Anguilla;

---

[11] To be clear, N.Y. C.P.L.R. 202 applies equally where the competing statute of limitations is based upon the law of a country other than the United States. *See, e.g.*, *Petroholding Dominicana, Ltd. v. Gordon*, No. 18-CV-1497, 2019 WL 2343658, at *4–8 (S.D.N.Y. June 3, 2019) (determining whether the New York statute of limitations or the statute of limitations under the law of the Dominican Republic applied to the plaintiff's claim under N.Y. C.P.L.R. 202).

(2) Plaintiff is a not a New York resident; and (3) this claim arose in Anguilla, it is clear that New York's six-year statute of limitation applies in this case. *See, e.g.*, *Wang v. Palmisano*, 157 F. Supp. 3d 306, 318–19 (S.D.N.Y. 2016) (applying the N.Y. C.P.L.R. 202 analysis and determining that the relevant statutes of limitations of Massachusetts governed over New York's statute of limitations as to certain claims because "Plaintiff's claim accrued in Massachusetts because Massachusetts was where Plaintiff resided at the time his injuries, which were economic, occurred" and "Massachusetts' limitations periods of three and two years" were "shorter than New York's six-year period for equivalent claims").[12]

The Court also notes that, although Plaintiff argued that Anguilla's twelve-year statute of limitations applied to this Action in a pre-motion letter, (*see* Letter from Geoffrey T. Raicht, Esq. to Court 2 (Oct. 17, 2023)), he conceded that New York's six-year statute of limitations applied in his Opposition and exclusively cited cases applying New York law therein, (*see* Pl's Opp'n 12–16; *see also id.* at 12 (stating that New York's "six[-]year statute of limitations" applied to his breach-of-guaranty claim)). Thus, he has waived his choice-of-law argument. *Reed Constr. Data Inc. v. McGraw-Hill Cos. Inc.*, 49 F. Supp. 3d 385, 423 (S.D.N.Y. 2014) ("A party can waive a choice-of-law argument."); *accord Travelers Cas. Ins. Co. of Am. v. Blizzard Busters Snowplowing Corp.*, No. 21-CV-8220, 2023 WL 2648772, at *4 (S.D.N.Y. Mar. 27, 2023); *see*

_____

[12] Lest there be any doubt as to where Plaintiff's claim arose, the Court notes that New York has a general rule that "a foreign plaintiff's cause of action for economic damages accrues 'where the plaintiff resides and sustains the economic impact of the loss.'" *Petroholding Dominicana, Ltd*, 2019 WL 2343658, at *6 (quoting *Global Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482, 485 (N.Y. 1999)); *see also IKB Int'l S.A. v. Bank of Am.*, No. 12-CV-4036, 2014 WL 1377801, at *5 (S.D.N.Y. Mar. 31, 2014) ("Where . . . a claim is based on financial injury, the claim accrues where the plaintiff resides and sustains the economic impact of the loss." (quotation marks omitted)), *aff'd*, 584 F. App'x 26 (2d Cir. 2014) (summary order). Here, CCIB—on whose behalf Plaintiff brought this Action—is an Anguillan corporation with a principal place of business in Anguilla, and it is undisputed that it suffered its alleged loss in Anguilla. (Am. Compl. ¶ 1.)

*also Tesla Wall Sys., LLC v. Related Cos., L.P.*, No. 17-CV-5966, 2018 WL 4360777, at *2

(S.D.N.Y. Aug. 15, 2018) ("When a party assumes in its briefs that a particular jurisdiction's law

applies, it gives implied consent sufficient to establish choice of law." (alteration adopted)

(quotation marks omitted)).

 Next, for purposes of calculating the timeliness of Plaintiff's claim, the law is clear that

the applicable six-year limitations period "begins to run when the principal is in default."

*Cadlerock*, 134 N.Y.S.3d at 237; *see also Chi. Title Ins. Co.*, 114 N.Y.S.3d at 704 (same); *Haber*

*v. Nasser*, 733 N.Y.S.2d 720, 721 (App. Div. 2001) ("The six-year [s]tatute of [l]imitations

applicable to a guaranty begins to run when the debtor defaults on the underlying debt."). Here,

Plaintiff's claim accrued as early as February 2012, when Indigo first defaulted on the Loan, and

certainly no later than July 19, 2016, when "Plaintiff made a [] demand on Defendants to pay the

outstanding indebtedness of Indigo pursuant to the Guaranty." (Am. Compl. ¶¶ 14–15.)

Drawing all reasonable inferences in Plaintiff's favor and concluding that his claim accrued on

July 19, 2016, his claim is prima facie untimely, because he did not attempt to file a complaint

until September 13, 2023—over a year *after* the limitations period expired on July 19, 2022.

(*See* Dkt. No. 1.)[13]

---

[13] Defendants assert that this Action commenced on September *15*, 2023 for statute-of-limitations purposes, presumably because the complaints filed on September 13 and 14, 2023 were flagged by the Clerk of Court as deficient. (*See* Defs' Mem. 13; *see also* Dkt. Nos. 1, 7.) However, such deficiencies "do[] not invalidate the timely filing of [a c]omplaint." *Rodriguez v. City of New York*, No. 10-CV-1849, 2011 WL 4344057, at *3 (S.D.N.Y. Sept. 7, 2011) (explaining that a deficient complaint filed before the statute of limitations had run constituted valid commencement of the action); *see also Byars v. City of Waterbury*, No. 93-CV-1329, 1993 WL 513273, at *1 (D. Conn. Dec. 2, 1993) (similar and collecting cases); Fed. R. Civ. P. 5(d)(4) ("The clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice.").

In light of the foregoing, the Court must turn to considering whether Plaintiff has met his burden of "plausibly alleg[ing] that [he] fall[s] within an exception to the applicable statute of limitations." *Bloom v. AllianceBernstein L.P.*, No. 22-CV-10576, 2024 WL 1255708, at *12 (S.D.N.Y. Mar. 25, 2024) (quoting *Roeder v. J.P. Morgan Chase & Co.*, 523 F. Supp. 3d 601, 611–12 (S.D.N.Y. 2021)); *see also Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 436 (S.D.N.Y. 2014) ("[A]ll of the claims in the [c]omplaint are prima facie time-barred. Accordingly, the claims survive the defendants' statute-of-limitations-based defense only if the plaintiffs have plausibly alleged that they fall within an exception to the applicable statutes of limitations."), *aff'd*, 579 F. App'x 7 (2d Cir. 2014) (summary order).[14]

## 2. Waiver of the Statute of Limitations Defense

As noted above, Section 3 of the Guaranty provides that "Guarantors[, i.e., Defendants,] waive the benefit of any statute of limitations affecting their liability hereunder or the enforcement thereof." (Guaranty § 3.) Defendants assert that such a clause is unenforceable. (*See* Defs' Mem. 13–14.) The Court agrees.

---

[14] On this score, Plaintiff failed to address whether certain New York executive orders issued during the COVID-19 pandemic operate to extent the limitations period applicable to his claim. (*See* Defs' Mem. 13 n.2.) As Defendants pointed out, courts are clearly split on the import of those executive orders. *See, e.g., Uzoigwe v. Charter Commc'ns, LLC*, No. 23-CV-7383, 2024 WL 1311525, at *4 (E.D.N.Y. Mar. 18, 2024) (explaining that "some courts strictly interpret the word 'toll' in [the original executive order] to mean a 228-day extension on limitations periods for *all* claims," whereas other courts "have found that [the executive orders] *only* applied to limitations periods for claims that would have otherwise expired during the time when these [executive orders] were in effect, between March 20, 2020 and November 3, 2020" (emphases in original) (collecting cases)), *report and recommendation adopted*, 2024 WL 1756503 (E.D.N.Y. Apr. 24, 2024). This Court, however, need not delve any deeper into this morass at this juncture, because the effect of those executive orders (if any) on limitations periods generally has no bearing on the Court's analysis with respect to the instant Motion given that—as pled—this case would be time barred even assuming that the most generous interpretation of the executive orders applied. That is so because 228 days after July 19, 2022 is March 4, 2023, and the initial Complaint was not filed until more than *six months* later. (*See* Dkt. No. 1.)

New York General Obligations Law § 17-103 provides that:

A promise to waive[] . . . the statute of limitation applicable to an action arising out of a contract express or implied in fact or in law, *if made after the accrual of the cause of action* and made, either with or without consideration, in a writing signed by the promisor or his agent is effective, according to its terms, to prevent interposition of the defense of the statute of limitation in an action or proceeding commenced within the time that would be applicable if the cause of action had arisen at the date of the promise, or within such shorter time as may be provided in the promise.

N.Y. Gen. Oblig. Law § 17-103(1). Thus, under certain circumstances, parties can agree to waive a statute of limitations defense. *See id.* Crucially, however, "for an agreement that extends the statute of limitation to be valid, § 17-103(1) 'requires that the agreement be made after the accrual of the cause of action.'" *Xerox State & Loc. Sols., Inc. v. Xchanging Sols. (USA), Inc.*, 216 F. Supp. 3d 355, 361 (S.D.N.Y. 2016) (quoting *Lifset v. W. Pile Co.*, 446 N.Y.S.2d 487, 489 (App. Div. 1981)); *see also John J. Kassner & Co. v. City of New York*, 389 N.E.2d 99, 103 (N.Y. 1979) (explaining that agreements under § 17-103 "made prior to the accrual of the cause of action continue to have *no effect*" (emphasis added) (quotation marks omitted)).

Here, there is no question that the purported statute-of-limitations waiver in the Guaranty is of no effect. The Amended Complaint is clear that the Guaranty was executed in *2005*, (*see* Am. Compl. ¶¶ 7–8); however, as noted above, Plaintiff's cause of action did not accrue until years later—2012 at the earliest and 2016 at the latest, (*see id.* ¶¶ 14–15). Therefore, Plaintiff cannot rely on Section 3 of the Guaranty to get around Defendants' statute-of-limitations defense. *See Deutsche Bank Nat'l Tr. Co. Tr. for Harborview Mortg. Loan Tr. v. Flagstar Cap. Mkts. Corp.*, 112 N.E.3d 1219 (N.Y. 2018) (stating that § 17-103 "*requires* an agreement

[thereunder] to be made 'after the accrual of the cause of action[']" (quoting N.Y. Gen. Oblig. Law § 17-103(1)).[15]

### 3.  Acknowledgment of and Partial Payment Toward the Debt

Plaintiff attempts to meet his burden to plausibly plead that this case falls within an exception to the applicable statute of limitations, *see Twersky*, 993 F. Supp. 2d at 436, by arguing that Defendants' alleged acknowledgement of their debt under the Loan, as well as an alleged partial payment toward that debt, functionally restarted the limitation period such that it began "running anew," (*see* Pl's Opp'n 12–16).

It is true that "[u]nder New York law, a debtor's acknowledgement of indebtedness may toll the statute of limitations for claims on that debt." *Bainbridge Fund Ltd. v. Republic of Argentina*, 37 F.4th 847, 852 (2d Cir. 2022) ("This doctrine treats the recognition of debt as 'a new promise to pay.'" (quoting *Batavia Townhouses, Ltd. v. Council of Churches Hous. Dev. Fund Co.*, 133 N.Y.S.3d 133, 137 (App. Div. 2020)).  This rule is codified under N.Y. General Obligations Law § 17-101, which provides as follows:

> An acknowledgment or promise contained in a writing signed by the party to be charged thereby is the only competent evidence of a new or continuing contract whereby to take an action out of the operation of the provisions of limitations of time for commencing actions under the civil practice law and rules other than an action for the recovery of real property. This section does not alter the effect of a payment of principal or interest.

---

[15] Separate and apart from the fact that Section 3 of the Guaranty is unenforceable as a matter of law, Plaintiff fails to address this argument in his Opposition, (*see generally* Pl's Opp'n,), and therefore has effectively conceded it, *see Cardoso v. Wells Fargo Bank, N.A.*, No. 21-CV-8189, 2022 WL 4368109, at *9 (S.D.N.Y. Sept. 20, 2022) ("The plaintiff's opposing memorandum of law does not respond to th[ese] argument[s], and effectively concedes [them] by his failure to respond to them." (alterations adopted) (citation omitted)); *Di Pompo v. Mendelson*, No. 21-CV-1340, 2022 WL 463317, at *2 (S.D.N.Y. Feb. 15, 2022) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them." (quoting *Felske v. Hirschmann*, No. 10-CV-8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012))), *on reconsideration in part*, 2022 WL 1093500 (S.D.N.Y. Apr. 7, 2022).

N.Y. Gen. Oblig. Law § 17-101.

For this doctrine to be effective, "[t]he acknowledgement must be [1] in writing, [2] made under such circumstances that an express promise to pay the debt may be fairly implied, and [3] must contain nothing inconsistent with an intention on the part of the debtor to pay it[.]" *Bainbridge Fund Ltd.*, 37 F.4th at 852 (quotation marks and citation omitted); *see also Wizara, LLC v. Smartlink Commc'n, SpA*, No. 17-CV-424, 2024 WL 964227, at *3 (N.D.N.Y. Mar. 6, 2024) (same); *Faulkner v. Arista Recs. LLC (Faulkner I)*, 602 F. Supp. 2d 470, 478 (S.D.N.Y. 2009) ("To toll effectively or restart the running of the statute of limitations under § 17-101, an acknowledgment or promise must be in writing, be signed by the debtor party, recognize an existing debt and contain nothing inconsistent with an intention on the part of the debtor to pay it." (quotation marks omitted) (citing, inter alia, *Lew Morris Demolition v. Bd. of Educ.*, 355 N.E.2d 369, 371 (N.Y. 1976)).

This doctrine is not without limitations. For instance, "[b]oth the acknowledgement of the existing debt, and the intent to repay the same, must be *unconditional*." *Bild v. Konig*, No. 09-CV-5576, 2011 WL 666259, at *4 (E.D.N.Y. Feb. 14, 2011) (citing *In re Brill*, 318 B.R. 49, 55 (S.D.N.Y.2004)); *see also Faulkner I*, 602 F. Supp. 2d at 479 (same). In fact, "[i]f any condition must be satisfied prior to payment being made, the creditor must show that the condition has been satisfied before application of the toll embodied in § 17-101." *Faulkner I*, 602 F. Supp. 2d at 479; *see also Costa v. Deutsche Bank Nat'l Tr. Co. for GSR Mortg. Loan Tr. 2006-OA1*, 247 F. Supp. 3d 329, 349 (S.D.N.Y. 2017) (explaining that, insofar as "a written promise or acknowledgement is not unconditional but instead is contingent upon some future event, the creditor has the burden of proving that the condition has been met" (citation omitted)).

Further, "[a]n offer to settle for less than a plaintiff's outstanding claim does not constitute an acknowledgment because it is conditioned on the plaintiff's agreement to accept less than the full amount of the outstanding debt." *Lucesco Inc. v. Republic of Argentina*, No. 16-CV-7638, 2017 WL 3741342, at *5 (S.D.N.Y. Aug. 8, 2017) (citing *Hakim v. Peckel Fam. Ltd. P'ship*, 721 N.Y.S.2d 543, 544 (App. Div. 2011)); *see also Callahan v. Credit Suisse (USA), Inc.*, No. 10-CV-4599, 2011 WL 4001001, at *7 (S.D.N.Y. Aug. 18, 2011) ("[T]olling [under § 17-101] does not apply here because [the d]efendants' acknowledgments contained in [a s]eparation [a]greement were clearly conditioned on the p]laintiff's acceptance. Accordingly[,] the intent to pay cannot be considered unconditionally acknowledged.").

In connection with his § 17-101 argument, Plaintiff expressly disclaims reliance upon most of the communications between himself and Defendants that are alleged in the Amended Complaint, many of which occurred more than six years before the expiry of the statute of limitations. (*See* Pl's Opp'n 13 n.1; *see also* Am. Compl. ¶¶ 15–18.) Instead, Plaintiff relies upon three emails—dated October 24, 2019, November 8, 2019, and December 10, 2019, respectively—as well as an alleged partial payment by Defendants toward their debt under the Loan. (*See* Pl's Opp'n 13–16.) The Court will assess these two arguments in turn below.[16]

---

[16] The Court rejects Defendants' prefatory argument that it cannot consider the Parties' communications in connection with this analysis because such communications concern possible settlement and are therefore inadmissible pursuant to Federal Rule of Evidence 408. (*See, e.g.*, Defs' Mem. 15–16.) Putting aside the fact that "the admissibility of documents incorporated in the complaint is [generally] irrelevant at the dismissal stage[,]" *Westwide Winery, Inc. v. SMT Acquisitions, LLC*, 511 F. Supp. 3d 256, 265 (E.D.N.Y. 2021) (quoting *Cerni v. J.P. Morgan Sec., LLC*, 208 F. Supp. 3d 533, 540–41 (S.D.N.Y. 2016)), settlement communications may be admissible for "another purpose," Fed. R. Evid. 408(b), such as resolving disputes over whether a statute of limitations bars a plaintiff's claims, *see, e.g.*, *Faulkner v. Arista Recs. LLC (Faulkner II)*, 797 F. Supp. 2d 299, 317 (S.D.N.Y. 2011) (holding that Rule 408 did not preclude the court from considering a settlement communication for purposes of its § 17-101 analysis).

a.  The Emails

First, the Court considers whether the emails upon which Plaintiff relies meet the requirements of § 17-101.  Again, Plaintiff points to emails dated October 24, 2019, November 8, 2019, and December 10, 2019.  (*See* Pl's Opp'n 13–14.)

As an initial matter, the Court notes that the Amended Complaint makes no allegation whatsoever regarding the November 8, 2019 email.  (*See generally* Am. Compl.)  Thus, there is no basis for the Court to consider it, as it cannot be said to be incorporated by reference or otherwise integral to the Amended Complaint.  *See supra* Section I.A.  Further, to the extent Plaintiff seeks to amend his pleading through his Opposition, he simply cannot do so.  *See Cortese v. Skanska Koch, Inc.*, No. 20-CV-1632, 2021 WL 429971, at *18 n.4 (S.D.N.Y. Feb. 8, 2021) ("[The p]laintiffs' argument fails for the simple reason that it was not pleaded and a party cannot amend its complaint through a brief."); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (finding that a plaintiff may not amend its complaint through its opposition brief); *Schulz v. Medtronic, Inc.*, No. 21-CV-414, 2022 WL 503960, at *2 (D. Conn. Feb. 18, 2022) ("[I]t is axiomatic that [a] [c]omplaint cannot be amended by the briefs in opposition to a motion to dismiss.") (quoting *Weir v. City of New York*, No. 05-CV-9268, 2008 WL 3363129, at *9 (S.D.N.Y. Aug. 11, 2008)); *Red Fort Cap., Inc. v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456, 476 (S.D.N.Y. 2019) (same).  The Court therefore declines to consider the November 8, 2019 email.

In the Amended Complaint, Plaintiff does aver that, on October 24, 2019, "Cromwell sent a signed email to [Plaintiff] and his colleague [] Gardner explaining the steps he had taken to list the Property for sale in furtherance of generating proceeds to pay towards the Loan

indebtedness." (Am. Compl. ¶ 18.) In reality, however, Cromwell wrote the October 24, 2019

email to Gardner, copying Plaintiff, stating in relevant part:

> In his letter dated 9 October 2019, [Plaintiff] suggested we retain an agent and
> obtain an outline of the sales strategy together with an estimated achievable sale
> price from the agent.
>
> We have provisionally selected Properties in Paradise as the broker with whom we
> will list the property. This will be an exclusive listing (it is open to being co-
> brokered with other brokers). The broker has sent to us their form of broker/agent
> agreement and we are in the process of negotiating this document and expect to
> finalize it when [Rozycki] is in Anguilla next week. [Rozycki] will be in Anguilla
> commencing October 29. We have had discussion with the broker about the listing
> price and how this fits into a "sales strategy" in the context of the Anguilla market,
> which is a unique market. We expect to finalize this and any other details with the
> broker, and sign the listing agreement, when [Rozycki] is in Anguilla next week.

(Cromwell Decl. Ex. Q at 1.)

As to the December 10, 2019 email, Plaintiff alleges that "Cromwell sent a signed email

to [] Gardner and [Plaintiff] stating that the Property had been listed for sale." (Am. Compl.

¶ 18.) And as the email itself reveals, Cromwell in fact emailed Gardner, copying Plaintiff, and

said:

> The property is listed with Properties in Paradise at $895,000. The broker still
> needs to choose photographs to be put on the website. We have been
> communicating on this with the broker, and we expect that the listing will appear
> on the Properties in Paradise website in the next couple of days.

(Cromwell Decl. Ex. R at 1.)

Defendants argue that neither of these emails constitutes the requisite unconditional

acknowledgement of their debt under the Loan that is consistent with an intention by Defendants

to pay that debt. (Defs' Mem. 22; Defs' Reply 7–11.) The Court agrees. On their face, the

October 24, 2019 and December 10, 2019 emails do not explicitly acknowledge the debt under

the Loan, nor do they say anything from which the Court can fairly imply "an express promise to

pay the debt[,]" in whole or part. *See Bainbridge Fund Ltd.*, 37 F.4th at 852 (quotation marks

and citation omitted).  Put differently, this is not a case where Defendants' writings indicated that

they would "honor and pay the total amount of the[ir] debt." *Wizara, LLC*, 2024 WL 964227, at

*3 (quotation marks omitted) (concluding that the applicable statute of limitations had reset

where, among other things, the defendant had sent the plaintiff two letters, one asking for an

extension of time to pay an acknowledged debt, and another stating that it would "honor and pay

the total amount of the debt by the end of year 2015[]" (quotation marks omitted)).

To be sure, accepting Plaintiff's allegations as true, he does allege that Cromwell "sent a

signed letter to [Plaintiff] stating that he wished to market the Property for sale to put the

proceeds towards a resolution of the Loan debt" on October 4, 2019.  (Am. Compl. ¶ 18.)

However, that allegation, coupled with the October 24, 2019 and December 10, 2019 emails, at

most implies an offer to make a partial payment toward the debt, or, perhaps, to settle the loan.

But insofar as Defendants sought to make a partial payment, Plaintiff is required to demonstrate

that "[any] payment was 'accompanied by circumstances amounting to an absolute and

unqualified acknowledgment by the debtor of more being due, from which a promise may be

inferred to pay the remainder.'" *U.S. Bank Nat. Ass'n v. Martin*, 41 N.Y.S.3d 550, 552 (App.

Div. 2016) (quoting *Lew Morris Demolition*, 355 N.E.2d at 321).  Far from plausibly alleging

"circumstances amounting to an absolute and unqualified acknowledgment by the debtor of more

being due," *id.*, Plaintiff only alleges that the Property was ultimately put up for sale at an

auction in 2022, "which resulted in a successful credit bid of $644,000 on behalf of CCIB[,]" and

he further makes clear that, at that time, "the unpaid principal, interest, and penalties on the Loan

[was] over $1.1 million[,]" (Am. Compl. ¶ 21).  But he makes no allegation that there was any

sort of acknowledgment by Defendants that they still owed Plaintiff under the Loan, let alone an

absolute and unqualified one.  (*See generally id.*)

26

And to the extent the October 24, 2019 and December 10, 2019 emails could be construed as an offer from Defendants to settle their debt, the Court reiterates that "[a]n offer to settle for less than a plaintiff's outstanding claim does not constitute an acknowledgment [under § 17-101] because it is conditioned on the plaintiff's agreement to accept less than the full amount of the outstanding debt." *Lucesco Inc.*, 2017 WL 3741342, at *5; *see also Hakim*, 721 N.Y.S.2d at 544 (explaining that the defendants' settlement offer letters did not renew the applicable limitations period under § 17–101, because the settlement was "conditioned on the plaintiff's acceptance of a disputed reduction in the principal amount of the mortgage—a condition which was never accepted by the plaintiff[,]" and concluding that "[t]he letters did not constitute an unconditional and unqualified acknowledgment of a debt"); *Sitkiewicz v. County of Sullivan*, 681 N.Y.S.2d 677, 678–79 (App. Div. 1998) (holding that an "offer letter was not an unconditional promise to pay a sum certain" in satisfaction of § 17-101 because it did not acknowledge the debt but "merely made an offer of settlement which [the] plaintiff never accepted").[17]  The Amended Complaint, however, is devoid of any allegation even suggesting that Plaintiff took Defendants up on their offer as set forth in the October 24, 2019 and December 10, 2019 emails.  (*See generally* Am. Compl.)  To the contrary, Plaintiff *himself* conducted the auction that netted far less than the amount still owing on the Loan.  (*See id.* ¶ 21.)

Plaintiff's reliance on *Hawk Mountain LLC v. RAM Capital Group LLC*, 144 N.Y.S.3d 18 (App. Div. 2021), in opposition to the Motion is misplaced.  (Pl's Opp'n 16.)  There, the Appellate Division reversed the trial court's decision granting the defendant's motion to dismiss

---

[17] Plaintiff also has not alleged that any sale of the Property as discussed in the October 24, 2019 and December 10, 2019 emails would have covered the amount due under the Loan. (*See generally* Am. Compl.)

on statute-of-limitations grounds, and concluded that the separation and distribution agreement at issue met the requirements of § 17-101 given that it provided, in relevant part, that "[the] defendant agree[d] to make full payment and satisfaction of all of the outstanding indebtedness plus accrued interest that it owe[d the] plaintiffs, and one of the schedules annexed to the [the agreement] includes the amount owed by [the] defendant . . . on a note, as well as accrued interest on that amount." *Hawk Mountain LLC*, 144 N.Y.S.3d at 19 (alteration adopted) (quotation marks omitted).[18]

In short, Plaintiff has not shown, much less plausibly alleged, that the October 24, 2019 and December 10, 2019 emails meet the requirements of § 17-101.

b.  The Alleged Partial Payment

The Court next addresses whether an alleged partial payment toward Defendants' debt under the Loan restarted the limitations period.  Plaintiff specifically asserts that "[b]y conveying the FFE in further reduction of the loan debt, Defendants made a partial payment that restarted the statute of limitations anew."  (Pl's Opp'n 15.)

---

[18] To the extent that Plaintiff relies upon *Maidman Family Parking, LP v. Wallace Industries, Inc.*, 42 N.Y.S.3d 476 (App. Div. 2016) and *GP Hemisphere Associates, L.L.C. v. Republic of Nicaragua*, No. 99-CV-10302, 2000 WL 1457025 (S.D.N.Y. Sept. 28, 2000), the Court likewise finds those cases to be clearly distinguishable.  (*See* Pl's Opp'n 12.)  In *Maidman Family Parking*, the Appellate Division affirmed the trial court's conclusion that § 17-101 operated to renew the limitations period, where a defendant signed a letter "acknowledg[ing] the principal amount and maturity date for each loan and[] . . . agree[ing] to waive any statute of limitations defense."  42 N.Y.S.3d at 478.  Plaintiff has not plausibly alleged here that such a signed writing exists in this case.  And in *GP Hemisphere Associates*, another court in this District determined that a settlement agreement met the requirements of § 17-101, because, among other things, the agreement: "detail[ed] the principal amounts owed" to the plaintiff, which amounts the defendant "expressly acknowledge[d]" therein; and "contain[ed] an acknowledgment by [the defendant] of its obligation to pay accrued interest, along with a commitment by [the defendant] to determine the amounts of such interest."  2000 WL 1457025, at *4.  Again, Plaintiff has not plausibly alleged that Defendants' have so plainly acknowledged their alleged debt under the Loan for purposes of § 17-101.

Although the Parties' briefing conflates the issues somewhat, Plaintiff's argument here is not quite a § 17-101 argument.  Apart from that provision—and as alluded to above—under New York common law "[a] limitations period may be extended pursuant to the 'partial payment exception,' which 'has the effect of extending or renewing the statute of limitations period' when there is 'a payment of a portion of an admitted debt, made and accepted as such, accompanied by circumstances amounting to an absolute and unqualified acknowledgement by the debtor of more being due.'"  *Navon v. Schachter Portnoy, L.L.C.*, No. 19-CV-63, 2019 WL 4306403, at *4 (E.D.N.Y. Sept. 11, 2019) (quoting *McNeary v. Charlebois*, 95 N.Y.S.3d 421, 424 (App. Div. 2019)); *see also In re Mallett, Inc.*, No. 21-11619, 2024 WL 150628, at *11 (Bankr. S.D.N.Y. Jan. 12, 2024) (same); *U.S. Bank Nat. Ass'n*, 41 N.Y.S.3d at 552 (noting that "[i]n order to demonstrate that the statute of limitations has been renewed by a partial payment, it must be shown that the payment was accompanied by circumstances amounting to an absolute and unqualified acknowledgment by the debtor of more being due, from which a promise may be inferred to pay the remainder" (quotation marks omitted)).

In his Amended Complaint, Plaintiff alleges that Defendants' Anguillan counsel, Bourne, offered Plaintiff, through his Anguillan counsel, "all of the [FFE] on the Property in exchange for $40,000 to be put towards the auction expenses and the remaining indebtedness."  (Am. Compl. ¶ 23; *see also* Tacon Decl. Ex. E at 1 (letter from Bourne noting that he was instructed "by Indigo" and that Indigo's offer was "to sell and convey to [Plaintiff] for the sum of US$40,000.00 all the [FFE] which were not part of the public auction transaction[,]" to be "paid as a credit by or on behalf of Indigo . . . against the auction expenses with any surplus therefrom applied as an addition to the purchase price obtained at the public auction").)  As alleged,

Plaintiff ultimately "agreed to take the FFE in exchange for a $35,000 reduction in the outstanding indebtedness" in December 2022.  (Am. Compl. ¶ 23.)

The Court has little trouble concluding that Plaintiff has failed to plausibly allege that Defendants' purported partial payment toward their debt under the Loan served to restart the statute of limitations governing his breach-of-guaranty claim.  Accepting all of Plaintiff's allegations as true and drawing all reasonable inferences in his favor, the Amended Complaint merely alleges Defendants paid $35,000 toward Indigo's debt.  (*See id.*)  However, Plaintiff has alleged *no* circumstances "amounting to an absolute and unqualified acknowledgement by the debtor of more being due[,]'" as is required under New York common law.  *See Navon*, 2019 WL 4306403, at *4 (citation omitted); *accord U.S. Bank Nat. Ass'n*, 41 N.Y.S.3d at 552 (same); *see also RTT Holdings, LLC v. Nacht*, 170 N.Y.S.3d 201, 203 (App. Div. 2022) (affirming the trial court's decision granting a motion to dismiss on statute-of-limitations grounds because, notwithstanding the defendant-decedent's partial payment toward her mortgage debt, there were no allegations or evidence "evince[ing] an absolute and unqualified acknowledgment of [that] mortgage debt"); *Chase v. Houghton*, 838 N.Y.S.2d 260, 261 (App. Div. 2007) (affirming a lower court's dismissal of the plaintiff's complaint on statute-of-limitations grounds and concluding that "the evidence failed to establish an absolute and unqualified acknowledgment of more being owed" because, although the defendant made a partial payment toward their debt, the payment check "bore no notation as to its purpose and stated no remaining balance[,]" an invoice relatedly bore "no notation by [the] defendant acknowledging any additional debt[,]" and "there [was no] any other documentary evidence or testimony that defendant had acknowledged a remaining balance" (quotation marks omitted)).

In relying on *United States v. Glens Falls Insurance Co.*, 546 F. Supp. 643 (N.D.N.Y. 1982), Plaintiff misunderstands the law, (*see* Pl's Opp'n 12).  There, as Plaintiff notes, the court stated that "at common law, part payment of a debt starts the statute of limitations running anew in that part payment is tantamount to a voluntary acknowledgment of the existence of the debt, from which the law implies a new promise to pay the balance."  *Glens Falls*, 546 F. Supp. at 645.  However, the court did not end there; in a sentence Plaintiff neglected to quote, the court explained—in accord with the cases discussed above—that "[i]t must be shown that there was part payment of an admitted debt, made and accepted in circumstances where an *unequivocal promise may be inferred to pay the remainder of the debt*."  *Id.* at 645–46 (emphasis added) (citing *Lopez Lanza v. Garco Export, Inc.*, 294 N.Y.S.2d 234 (App. Div. 1968)).  Plaintiff has not made that showing here.[19]

*          *          *

In sum, because Plaintiff has failed to plausibly allege that Defendants acknowledged their debt within the meaning of § 17-101—or via a partial payment—he cannot rely on either to avoid the fact that, as alleged, his claim is prima facie time barred.

### 4.  Equitable Estoppel

Finally, Plaintiff raises the alternative argument that Defendants should be equitably estopped from raising a statute of limitations defense.  (*See* Pl's Opp'n 16–20.)

---

[19] Plaintiff also points to *Fannie Mae v. Brigandi*, No. 611415/2015, 2016 N.Y. Misc. LEXIS 5612 (Sup. Ct. May 11, 2016).  (Pl's Opp'n 12, 15.)  However, the Court is unpersuaded by the analysis in that case because, there, the court—like Plaintiff here—relied on *Glens Falls* for the proposition that "partial payments of [a] debt, before or after the statute's expiration, toll the statute of limitations and start it running anew[,]" *Fannie Mae*, 2016 N.Y. Misc. LEXIS 5612, at *3–4, but seemingly ignores the instruction in *Glens Falls* itself that New York common law requires such a partial payment to be "made and accepted in circumstances where an unequivocal promise may be inferred to pay the remainder of the debt," 546 F. Supp. at 646.

The doctrine of equitable estoppel, which "applies where it would be unjust to allow a defendant to assert a statute of limitations defense[,]" *Zumpano v. Quinn*, 849 N.E.2d 926, 929 (N.Y. 2006), "is an 'extraordinary remedy[,]'" *Accent Delight Int'l Ltd. v. Sotheby's*, No. 18-CV-9011, 2024 WL 343171, at *1 (S.D.N.Y. Jan. 30, 2024) (quoting *Twersky*, 993 F. Supp. 2d at 442). "To benefit from equitable estoppel under New York law, [a] plaintiff must demonstrate: (1) conduct by the defendant which amounts to a false representation or concealment of material facts; (2) the defendant intended the false representation would be acted upon by the plaintiff; and (3) the defendant knew the real facts." *Chen v. Cenntro Elec. Grp. Ltd.*, No. 22-CV-7760, 2023 WL 2752200, at *5 (S.D.N.Y. Mar. 31, 2023) (footnote omitted) (citing *In re Vebeliunas*, 332 F.3d 85, 93–94 (2d Cir. 2003)). "With respect to himself, a plaintiff must show: '(1) lack of knowledge and of the means of knowledge of the true facts; (2) reliance upon the conduct of the defendant; and (3) prejudicial changes in his position.'" *Id.* (quoting *In re Vebeliunas*, 332 F.3d at 94). Put another way, a plaintiff seeking to invoke equitable estoppel "must also demonstrate reasonable reliance on the defendant's misrepresentations, and due diligence in bringing a claim when the conduct relied upon as the basis for equitable estoppel ceases to be operational." *Twersky*, 993 F. Supp. 2d at 442–43 (citing *Putter v. N. Shore Univ. Hosp.*, 858 N.E.2d 1140, 1142–43 (N.Y. 2006); *Zumpano*, 849 N.E.2d at 929, 931).

Importantly, the Second Circuit has held that "[w]hen a plaintiff relies on a theory of equitable estoppel to save a claim that otherwise appears untimely on its face, the plaintiff must specifically plead facts that make entitlement to estoppel plausible (not merely possible)." *Thea*, 807 F.3d at 501 (citing *Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 556–57); *accord Khan v. Yale Univ.*, 85 F.4th 86, 101–02 (2d Cir. 2023); *see also Dumontet v. UBS Fin. Servs., Inc.*, No. 21-CV-10361, 2024 WL 1348752, at *11 n.23 (S.D.N.Y. Mar. 29, 2024) (same); *Rodriguez*

*v. Bipin*, No. 22-CV-181, 2023 WL 3260129, at *4 (N.D.N.Y. Mar. 30, 2023) (same), *report and recommendation adopted sub nom. Rodriguez v. Bhavsar*, 2023 WL 3251522 (N.D.N.Y. May 4, 2023).[20]

 In support of his equitable estoppel argument, Plaintiff asserts that "[i]n various ongoing communications between the [P]arties to resolve the debt, Plaintiff or his representatives told Defendants that Plaintiff required evidence of Defendants' financial status in order to continue resolution attempts and forbear from filing suit." (Pl's Opp'n 16; *see also id.* at 19 ("Plaintiff was quite clear that he would forbear from filing suit only if he had visibility into Indigo's and Defendants' (as guarantors) ability to pay the debt.") He further contends—among other things—that, although Defendants indicated on a financial statement that their home in Scarsdale, New York was worth $2.2 million and had "a total of $1,830,359 in encumbrances," they sold that home for $2.2 million just six months later. (*Id.* at 18 ("It strains credulity that Defendants believed they were accurately representing the value of their Scarsdale home in their June 2021 communication to Plaintiff and then the market value of the property just happened to increase nearly 60% in the six months in which they later sold it.").) Based on that purported misrepresentation and other potential, as-yet undiscovered misrepresentations on their financial

---

[20] Courts are not in complete accord with respect to whether a plaintiff needs to plead the elements of equitable estoppel with *particularity* pursuant to Federal Rule of Civil Procedure 9(b). *Compare Twersky*, 993 F. Supp. 2d at 443 n.5 ("Federal courts follow New York law in requiring a plaintiff to plead each element of equitable estoppel with particularity." (collecting cases)), *with Bild*, 2011 WL 666259, at *6 ("The equitable estoppel asserted by Plaintiff, however, while equitable in nature, is not a cause of action or a defense—it is rather an equitable bar to the assertion of the affirmative defense of statute of limitations. Accordingly, Rule 9(b), governing pleadings, should not apply." (quotation marks and citation omitted)), *on reconsideration in part*, 2011 WL 1563576 (E.D.N.Y. Apr. 25, 2011). Here again, the Court need not take sides on this issue because Plaintiff failed to plausibly plead sufficient facts demonstrating his entitlement to rely on the doctrine equitable estoppel, regardless of whether he was required to do so with particularity. *See Twersky*, 993 F. Supp. 2d at 443 n.5 (coming to a similar conclusion).

statement, Plaintiff argues, in essence, that Defendants should not be able to rely on a statute-of-limitations defense because they duped him into refraining from bringing this Action sooner. (*See id.* at 16–20.)

Plaintiff cannot rely on the doctrine of equitable estoppel at this juncture for the simple reason that he did not "specifically plead facts that make entitlement to estoppel plausible (not merely possible)." *Thea*, 807 F.3d at 501. Indeed, apart from noting that "Defendants sold their home in Westchester in January 2022 for $3.5 million[,]" (Am. Compl. ¶ 27), Plaintiff failed to plead *any* of the facts he relies upon in connection with his equitable estoppel argument, (*compare* Pl's Opp'n 16–20, *with* Am. Compl.). For Plaintiff's claim to survive Defendants' Motion, that simply will not do. *See Thea*, 807 F.3d at 501; *see also Nachman v. Tesla, Inc.*, No. 22-CV-5976, 2023 WL 6385772, at *4 (E.D.N.Y. Sept. 30, 2023) ("[E]quitable estoppel . . . [is] unavailable because [the] plaintiff has not adequately pleaded in the complaint that 'the action was brought within a reasonable period of time' after the plaintiff 'was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" (quoting *Abbas v. Dixon*, 480 F.3d 636, 642 (2d. Cir. 2007)).

Relatedly, Plaintiff failed to plead facts plausibly showing that he "reasonably relied on the [D]efendants' misrepresentations." *Twersky*, 993 F. Supp. 2d at 443. The Court recognizes that Plaintiff has sought to bolster that equitable estoppel element through his Sur-Reply, in which he asserts specifically that he relied on Defendants' financial disclosures and, in doing so, refrained from filing suit in connection with the outstanding debt under the Loan, particularly in light of their representation as to the value of the Scarsdale home and Plaintiff's understanding of "the homestead exemption in New York." (Tacon Sur-Reply Decl. ¶¶ 4–5.) But it is beyond cavil that arguments raised for the first time in a sur-reply are deemed waived. *See, e.g.*, *U.S.*

*Sec. & Exch. Comm'n v. Amah*, No. 21-CV-6694, 2024 WL 3159846, at *2 n.2 (S.D.N.Y. June 25, 2024) (deeming waived "[the d]efendant's argument, which he raise[d] for the first time in his [s]ur-[r]eply"); *Herod's Stone Design v. Mediterranean Shipping Co. S.A.*, 434 F. Supp. 3d 142, 161 n.12 (S.D.N.Y. 2020) ("Legal arguments raised for the first time in a sur[-]reply, like arguments raised for the first time in a reply, are [generally deemed] waived." (alteration adopted) (citation omitted)); *see also United States v. Buff*, No. 19-CV-5549, 2021 WL 4556751, at *6 (S.D.N.Y. May 4, 2021) (finding that an argument made "for the first time in [the defendant's] sur-reply [was] improper" and therefore declining to consider it), *report and recommendation adopted*, 2021 WL 4148730 (S.D.N.Y. Sept. 13, 2021). Further, as Defendants point out, (*see* Letter from Steven A. Weg, Esq. to Court (Apr. 5, 2024)), Plaintiff's argument in his Sur-Reply plainly went beyond the scope of the reason for which the Court permitted him to submit that filing—that is, "to clarify that he in fact read [a] letter and attachment containing Defendants' falsely stated financials at the time they were sent," (*see* Dkt. Nos. 42–43).

Accordingly, as pled (in the Amended Complaint), Plaintiff cannot rely on the doctrine of equitable estoppel to defeat Defendants' statute-of-limitations defense.

### III.  Conclusion

For the foregoing reasons, the Court grants Defendants' Motion.[21]  Because this is the first adjudication of Plaintiff's claim, however, the Court's dismissal of that claim is without

---

[21] In light of its conclusion herein, the Court need not render a decision as to Defendants' alternative requests that it (1) convert the instant Motion into one for summary judgment, or (2) strike certain paragraphs from the Amended Complaint.  (*See, e.g.*, Defs' Mem. 6, 10, 25.)  As to the first request, the Court has "complete discretion in determining whether to convert motions to dismiss into motions for summary judgment[,]" *Balchan v. New Rochelle City Sch. Dist.*, No. 23-CV-6202, 2024 WL 2058726, at *4 (S.D.N.Y. May 7, 2024), but it declines to exercise that broad discretion here.

With respect to Defendants' alternative motion to strike, the Court notes its serious doubts as to the merits of that application.  More specifically, through their application Defendants ask this Court to strike paragraphs 16–20 of the Amended Complaint on the ground

prejudice.[22]  If Plaintiff wishes to file a second amended complaint alleging additional facts and

otherwise addressing the various deficiencies identified above, Plaintiff must do so within thirty

---

that those paragraphs "refer to communications that are clearly settlement discussions." (*Id.* at 25.)  In support of that argument, Defendants rely upon Federal Rule of Evidence 408, which, as alluded to above, provides that certain evidence from settlement negotiations is not admissible "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction[.]"  Fed. R. Evid. 408(a).

"Federal courts have discretion in deciding whether to grant motions to strike." *Capri Sun GmbH v. Am. Beverage Corp.*, 414 F. Supp. 3d 414, 423 (S.D.N.Y. 2019) (citation omitted). Federal Rule of Civil Procedure 12(f) provides in relevant part that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "However, motions to strike under Rule 12(f) are generally disfavored and granted only if there is strong reason to do so." *Sweigert v. Goodman*, 18-CV-8653, 2021 WL 603069, at *1 (S.D.N.Y. Feb. 16, 2021) (quotation marks omitted).  Moreover, "precedent instructs against applying the Federal Rules of Evidence at the pleadings stage, including on motions to strike." *Westwide Winery, Inc.*, 511 F. Supp. 3d at 265 (citing *Ricciuti v. N.Y.C Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)).

Given those legal principles and the early stage of this case, Defendants' assertion that paragraphs 16–20 of the Amended Complaint should be stricken would seem to put the cart before the horse.  Further, Rule 408 expressly provides that courts "may admit" settlement evidence "for another purpose."  Fed. R. Evid. 408(b).  Indeed, courts have been hesitant to grant motions to strike on Rule 408 grounds at the motion-to-dismiss stage for that very reason. *See Westwide Winery, Inc.*, 511 F. Supp. 3d at 265 (denying a motion to strike based on Rule 408 evidence at the pleading stage because the plaintiff sought "to rely on the settlement negotiations leading to [a certain settlement agreement] not to prove the validity or amount of the claims settled, but to prove the existence of [that settlement agreement]"); *see also Calise v. Casa Redimix Concrete Corp.*, No. 20-CV-7164, 2022 WL 355665, at *4–5 & n.5 (S.D.N.Y. Feb. 4, 2022) (denying a motion to dismiss based on Rule 408 where the letter at issue "was [allegedly] deployed by [the defendant] for another purpose—a retaliatory purpose—as a threat that formed part of a series of retaliatory acts" such that the letter "would not be barred by Rule 408[,]" and noting that the outcome would be the same even if the motion had been styled as a motion to strike); *cf. Faulkner II*, 797 F. Supp. 2d at 316–17 (determining that Rule 408 did not preclude the admissibility of certain letters because they were offered to prove that § 17-101 operated to extend the applicable statute of limitations, not whether the underlying contractual claims were valid).  In short, should Defendants move to strike paragraphs in a later pleading in this case on a similar basis, the Court would view such an application with skepticism.

[22] Notwithstanding Defendants' argument to the contrary, (*see, e.g.*, Defs' Mem. 6–7, 9, 25 (arguing that the Court should dismiss Plaintiff's claims with prejudice); Defs' Reply 6–7, 20 (same)), the Court is not convinced that "the flaws in [the Amended Complaint] are incurable," *Kling v. World Health Org.*, 532 F. Supp. 3d 141, 154 (S.D.N.Y. 2021) (quoting *Fort Worth Emps.' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 233 (S.D.N.Y. 2009)), particularly

days of the date of this Opinion & Order.  *See Tyson*, 2019 WL 1331913, at *19 ("The Court will afford Plaintiff an opportunity to amend if, after reviewing this Order and Opinion and the law therein, he still believes that he can plausibly state claims against Defendants." (alteration adopted) (citation omitted)).  There will be no extensions.  Plaintiff is further advised that a second amended complaint will completely replace, not supplement, the now-dismissed Amended Complaint.  Any second amended complaint must therefore contain *all* of the claims, defendants, and factual allegations that Plaintiff wishes the Court to consider.  If Plaintiff fails to timely file a second amended complaint, the dismissed claims may be dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motion.  (*See* Dkt. No. 27.)

SO ORDERED.

Dated:    September 24, 2024
          White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

---

given Defendants' protracted settlement discussions with Plaintiff, which, as alleged, do not necessarily evince good-faith negotiations.